# Exhibit C

SHANNON KEAST
Associate Counsel
CORRINA FREEDMAN
Associate Counsel
WRITERS GUILD OF AMERICA, WEST, INC.
7000 W. Third Street
Los Angeles, California 90048

(323) 782-4521
(323) 782-4806 (fax)
skeast@wga.org; cfreedman@wga.org

Counsel for Complainant

BEFORE THE WRITERS GUILD OF AMERICA, WEST, INC. – PRODUCERS

ARBITRATION TRIBUNAL

| | |
|---|---|
| In the Matter of the Arbitration between<br>WRITERS GUILD OF AMERICA, WEST, INC.,<br><br>Complainant,<br><br>vs.<br><br>HARDSTONE ENTERTAINMENT INC; BRANWEN PRODUCTIONS, LTD.; CROWN MEDIA HOLDINGS, INC. D/B/A CROWN HOLDINGS; U.S. BANK NATIONAL ASSOCIATION; U.S. BANK NATIONAL ASSOCIATION, CANADA BRANCH; AND SA GROUP PRODUCTIONS, LLC;<br><br>Respondents.<br><br>Relating to unpaid residual compensation in connection with various basic cable television motion pictures | FOURTH AMENDED NOTICE OF CLAIM SUBMITTED TO ARBITRATION AND THIRD AMENDED CLAIM<br><br>CASE NO. 10-CL-097 |

TO ALL PARTIES AND THEIR COUNSEL:

**PLEASE TAKE NOTICE** that the WRITERS GUILD OF AMERICA, WEST, INC. ("WGAW" or "the Guild") submits the above-captioned Fourth Amended Notice of Claim Submitted to Arbitration and Fourth Amended Claim to arbitration pursuant to Articles 10, 11 and 12 of the Writers Guild of America 2011 Theatrical and Television Basic Agreement ("MBA"). Pursuant to Article 11.A.1.c. of the MBA, the Guild waives submission of this Claim to steps 1 and 2 of the grievance procedure.

Pursuant to Article 11.C. of the MBA, Arbitrator Paul Crost was previously selected to hear this claim, which is set for hearing on August 14, 2014.

## INFORMATION REQUEST

Pursuant to Section 8 of the National Labor Relations Act, 29.U.S.C. § 158, the WGAW requests that on or before July 30, 2014, Respondents produce the following information and documents, which are relevant and necessary to the Guild's ability to enforce the MBA:

    a.    Copies of all licensing, distribution or assumption agreements and all documents that relate to or reflect the terms of such agreements including, but not limited to, the financial terms of such agreements, in connection with the various television motion pictures which are listed in the document attached hereto as "Schedule A" (collectively "Covered Pictures");

    b.    Copies of all documents, receipts or accountings received or sent by Respondents which relate to the licensing and/or distribution of the Covered Pictures to various markets including, but not limited, to basic cable, videodisc/videocassette, pay television, free television, foreign television, new media-EST, new media-consumer does not pay, and new media–limited period or fixed number of exhibitions;

    c.    Copies of all documents relating to the broadcast, exhibition or airing of the Covered Pictures including, but not limited to, documents sufficient to show every air date for each of the Covered Pictures on television, from inception to date and all carriage agreements relating to PIXL; and

    d.    Copies of all documents relating to the assignment or transfer of any portion of the right, title, interest or to the assumption of any obligations, including MBA obligations, in connection with each of the Covered Pictures, including, but not limited to, all communications with any person regarding such assignment or transfer.

## FOURTH AMENDED CLAIM
### [Pertaining to All Counts]

1.    Complainant WGAW is a labor organization and a party to the MBA. The WGAW brings this claim on behalf of the credited writers of the Covered Pictures to recover unpaid residual compensation due to them and for other related damages.

2. Respondents Hardstone Entertainment, Inc.; Branwen Productions, Ltd.; Crown Media Holdings, Inc. d/b/a Crown Holdings; U.S. Bank National Association; U.S. Bank National Association, Canada Branch; and SA Group Productions, LLC (collectively "Respondents") were at all material times signatory to or otherwise bound by the MBA.

3. Respondent Branwen Productions, Ltd. executed a letter by which it guaranteed the obligations under the 2011 MBA of Hardstone Entertainment, Inc.

4. During the term of the MBA, Respondent Hardstone Entertainment, Inc. entered into employment agreements with writers for writing services in connection with the Covered Pictures.

5. During the term of the MBA, one or more of the Respondents produced, or caused to be produced, the Covered Pictures.

6. The WGAW is informed, believes and thereon alleges that the Respondents are jointly and severally liable for any and all MBA obligations in connection with their respective Covered Pictures including, but not limited to, the obligations outlined herein.

7. During the term of the MBA, writing credits for the Covered Pictures became final. The final writing credits are set forth in "Schedule A," which is attached hereto.

8. The writing credits for the Covered Pictures were determined pursuant to the applicable television schedule of the MBA. The writers receiving credit on the Covered Pictures shall be collectively referred to herein as "Credited Writers."

9. Paragraph 2.b.(1) of Appendix C of the MBA provides in pertinent part:

> Except as otherwise provided herein, all terms and conditions of the 1988 – 2011 MBA Writers Guild of America Theatrical and Television Basic Agreement and all amendments and modifications thereto that are applicable to a dramatic program produced for first run syndicated free television and other programs to which Company has elected to apply this subparagraph 2.b. shall apply to such employment or acquisition.

10. Respondents thereafter released or caused to be released the Covered Pictures to various markets including, but not limited to, basic cable, videodisc/videocassette, pay television,

free television, foreign television, new media-EST, new media-consumer does not pay, and new media-limited period or fixed number of exhibitions.

## COUNT I

[Failure to Pay Residual Compensation]

11. Pursuant to Paragraph 2.b.(1) of Appendix C and Article 15.B.1. of the MBA, Respondents are required to pay Credited Writers residual compensation under the "Sanchez Formula" not later than four months after telecast of each respective rerun on basic cable.

12. Pursuant to Article 15.B.1. of the MBA, Respondents are required to pay to Credited Writers residual compensation not later than four months after telecast of each respective re-run on free television and in syndication.

13. Pursuant to Article 51.C.1. of the MBA, Respondents are required to pay each participating writer (as defined in Article 51.C.5. of the MBA) residual compensation in an amount equivalent to one and two-tenths percent (1.2%) of Respondents' accountable receipts derived from the licensing and/or distribution of the Covered Pictures to pay-type CATV or pay television.

14. Pursuant to Article 51.C.1. of the MBA, Respondents are required to pay each participating writer (as defined in Article 51.C.5. of the MBA) residual compensation for the licensing and/or distribution of the Covered Pictures to videodisc/videocassette in an amount equivalent to one and one-half percent (1.5%) of the first One Million Dollars ($1,000,000.00) of Producer's gross and at one and eight-tenths percent (1.8%) of Producer's gross in excess of One Million Dollars ($1,000,000.00).

15. Pursuant to Article 15.B.2. of the MBA, Respondents are required to pay Credited Writers residual compensation of fifteen percent (15%) of the applicable minimum not later than thirty days after the Company obtains knowledge of, and no later than six (6) months after, the first foreign telecast of the Covered Pictures on foreign television. Additionally, Respondents are required to pay Credited Writers residual compensation of ten percent (10%) of the applicable minimum when the applicable foreign gross receipts are exceeded.

16. Pursuant to Paragraph 1.b. of the Sideletter on Exhibition of Motion Pictures Transmitted Via New Media ("Sideletter") of the 2008 MBA, for exhibition of television motion pictures on new media via electronic sell through, Respondents are required to pay Credited Writers residual compensation in the amount of 1.8% of 20% of the Company's accountable receipts for the first 100,000 units and 3.5% thereafter.

17. Pursuant to Paragraph 1.a. of the Sideletter, for exhibition of television motion pictures on new media for a limited period or fixed number of exhibitions, Respondents are required to pay Credited Writers residual compensation in the amount of 1.2% of the Company's accountable receipts.

18. Pursuant to Paragraph 2.b. of the Sideletter, during the first year of exhibition of the Covered Pictures on new media via ad-supporting streaming, Respondents are required to pay Credited Writers residual compensation at the applicable percentage rate of the applicable minimum compensation upon expiration of the initial streaming window. Thereafter, Respondents are required to pay Credited Writers residual compensation in the amount of 2% of distributor's gross receipts for this usage.

19. In breach of the foregoing MBA provisions, Respondents have failed and refused and continue to fail and refuse to pay the required residual compensation, which compensation is currently due, owing and unpaid.

20. Pursuant to Articles 15.A.3.f., 51.C.6, 51, and 15.B.4 of the MBA, Respondents are required to pay interest on the unpaid residual compensation at the rate of one and one-half percent (1.5%) per month, commencing to accrue from the date of such delinquency and continuing to accrue until paid in full.

## COUNT II

[Failure to Report]

21. Pursuant to Article 15.B.5. of MBA, Respondents are required to give the WGAW prompt written notice of the date(s) on which the Covered Pictures are telecast in any city in the United States and Canada for the second run and subsequent runs thereafter.

22. Pursuant to Article 51.C.6. of MBA, Respondents are required to furnish or cause to be furnished to the WGAW on a quarterly basis, no later than sixty (60) days following the end of a calendar quarter, written reports showing the Producer's gross receipts for the preceding quarter from the distribution of the applicable Covered Pictures to videodisc/videocassette and pay television.

23. Pursuant to Article 53 of MBA, Respondents are required to make available to the Guild all the financial terms of all contracts relevant to the determination of the accuracy of any payment due to a writer, and the records showing the receipts and deductions for which to be accounted.

24. Pursuant to Article 15.B.6. of MBA, Respondents are required to furnish reports to the Guild showing the distributor's foreign gross derived from the foreign distribution of the Covered Pictures until all of the Credited Writers of the Covered Pictures have received the full additional payments for such foreign telecasting to which they are entitled.

25. Pursuant to Paragraph 3.c. of the Sideletter and Article 51 of the MBA, Respondents are required to furnish or cause to be furnished to the WGAW on a quarterly basis, and no later than sixty (60) days following the end of a calendar quarter, a written report showing the Producer's gross receipts from the licensing and/or distribution of the Covered Pictures to new media. Such reports shall specify the medium and source of the accountable receipts and shall be separated from revenues derived from the exploitation of Covered Pictures in traditional media.

26. In breach of the foregoing MBA provisions, Respondents have failed and refused and continue to fail and refuse to provide to the WGAW the requisite written reports as described above in a timely manner, and have failed refused and continue to fail and refuse to make accessible to the Guild all relevant financial documents as described above.

27. As a direct and proximate result of this breach, Credited Writers have suffered and unless Respondents are required to and do give the WGAW such written notices, reports, and access to relevant documents, shall continue to suffer damage by the loss of benefits

conferred on them under the MBA in connection with such reporting requirements. The WGAW will present proof of damage at the hearing.

28. As a further direct and proximate result of this breach, the WGAW has suffered and, unless Respondents are required to and do give the WGAW such written notices, reports, and access to relevant documents, shall continue to suffer damage to its prestige, to the integrity of the MBA and to its ability to enforce the residual compensation provisions of the MBA. The WGAW will present proof of damage at the hearing.

## COUNT III

[Failure to Pay Pension Plan and Health Fund Contributions]

29. Pursuant to Article 17 of the MBA, Respondents are required to make Pension Plan and Health Fund contributions on behalf of Credited Writers at the applicable percentage rate of the total gross residual compensation.

30. In breach of the foregoing MBA provisions, Respondents have failed and refused and continue to fail and refuse, to make the required Pension Plan and Health Fund contributions, which compensation is currently due, owing, and unpaid.

31. Pursuant to Article 17 of the MBA and the trust agreements, Respondents are required to pay interest on the unpaid Pension Plan and Health Fund contributions at a rate of eighty-three hundredths percent (.83%) per month commencing from the date the contributions were due and continuing to accrue until paid in full.

## COUNT IV

[Failure to Deliver Assumption Agreement]

32. Pursuant to Articles 51.C.8. and 51.C.9 of the MBA, signatory companies are required to obtain and deliver to the WGAW a written assumption agreement from any buyer, transferee or assignee in order to bind such buyer, transferee or assignee to all MBA obligations including, but not limited to, the MBA obligations referenced in this Claim, for the benefit of Credited Writers and the WGAW.

33. In breach of the foregoing provisions of the MBA, Respondents have failed and refused and continue to fail and refuse to deliver to the WGAW written assumption agreements in connection with the Covered Pictures.

34. As a direct and proximate result of Respondents' breach of the MBA, Credited Writers have suffered, and unless the Respondents are required to and do obtain and deliver to the WGAW valid assumption agreements, shall continue to suffer damage by the loss of benefits conferred on them under the MBA in connection with such delivery requirements. The WGAW will present proof of damage at the hearing.

35. As a further direct and proximate result of this breach of the MBA, the WGAW has suffered and, unless Respondents are required to and do obtain and deliver to the WGAW valid assumption agreements, shall continue to suffer damage to its prestige, to the integrity of the MBA and to its ability to monitor and enforce the residual compensation provisions of the MBA. The WGAW will present proof of damage at the hearing.

## COUNT V

[Posting of Bond or Security—MBA Art. 42]

36. Article 42 of the MBA provides in pertinent part as follows:

> Posting of Bonds -The Guild reserves the right, in the event it determines that a particular Company is not reliable or financially responsible, to require posting in advance of an adequate bond, cash or other security.
>
> The Company acknowledges the Guild's right to instruct its members to withhold services from any Company that has failed to post a bond when required to do so in accordance with the foregoing paragraph.

37. During the term of the present and predecessor MBAs, Respondents have engaged in a pattern and practice of contract breaches including, but not limited to, the systematic failure to make timely payment of residual compensation for multiple motion pictures. The present claim is only the latest example of this pattern and practice of contract breaches. As a result of these breaches, the Guild has been required to bear the administrative burden and economic costs of monitoring Respondents' noncompliance and initiating legal action to compel compliance with MBA obligations.

8

38. The Guild is informed and believes Respondents' failure to meet their contractual obligations is a result, in whole or in part, of their financial condition, certain details of which have recently come to light publicly. Based on this evidence, and on Respondents' ongoing pattern and practice of noncompliance with their MBA obligations, the Guild has determined that Respondents are not reliable or financially responsible.

39. In accordance with Article 42 of the MBA, the WGAW is entitled to an order requiring Respondents to post an adequate bond, cash or other security, in an amount and upon such conditions as are subject to proof at the time of the hearing, in order to assure compliance with Respondents' present and future MBA obligations.

## COUNT VI
[Breach of Covenant of Good Faith and Fair Dealing--Punitive Damages]

40. In every collective bargaining agreement, including the MBA, there is implied a covenant of good faith and fair dealing.

41. By engaging in a pattern and practice of noncompliance with their contractual obligations, as alleged more fully above, Respondents have violated the covenant of good faith and fair dealing in the MBA. The WGAW is informed and believes and thereon alleges that Respondents made promises contained in the MBA without the intention of performing them. Respondents made such promises with the intent of inducing reliance by the WGAW and Credited Writers. The WGAW and Credited Writers relied on such promises.

42. Respondents' ongoing pattern and practice of contract breaches is fraudulent and willful, and reflects conscious disregard for the rights of the WGAW and the writers it represents. Compensatory damages are insufficient to deter such willful misconduct. The Guild therefore seeks an award of punitive or exemplary damages.

## COUNT VII
[In the Alternative – Failure to Pay Initial MBA Minimum Compensation – Pay Television]

43. In the alternative, should the arbitrator find that any of the Covered Pictures are made for pay television, pursuant to Paragraph C.1 of Appendix B of the MBA and Article 13.B of the MBA, applicable guaranteed minimum compensation is due for purchase and/or

1  employment for writing services consisting of various writing steps in connection with Covered
2  Pictures.
3      44.    In breach of the MBA, Respondents have failed to pay applicable guaranteed
4  MBA minimum compensation in connection with purchases and/or writing services consisting of
5  various writing steps performed on the Covered Pictures, which amount is currently due, owing
6  and unpaid.
7      45.    Pursuant to Article 13.B.9 of the MBA, Respondents are required to pay interest
8  in connection with the late payment of the guaranteed compensation due at the rate of one and
9  one-half percent (1.5%) per month, commencing to accrue when payments became due, and
10 continuing to accrue until payments are made in full.

## COUNT VIII

[In the Alternative to Count I – Failure to Pay Residual Compensation – Pay Television]

46.  In the alternative, should the arbitrator find that any of the Covered Pictures are made for pay television, Respondents are required to pay to Credited Writers and pursuant to Paragraph D.3.a of Appendix B, a fixed residual due on the earlier of 10 exhibition days or 1 year, provided that the program is actually exhibited during the subsequent exhibition year derived from the licensing and/or distribution of the Covered Pictures to pay-type CATV or pay television.

47.  Respondents are required to pay to Credited Writers, pursuant to Paragraph G.3 of Appendix B, residual compensation in an amount totaling two percent (2%) of Respondents' accountable receipts derived from the licensing and/or distribution of the Covered Pictures to basic cable.

48.  Pursuant to Paragraph D.3.b of Appendix B of the MBA, Respondents are required to pay Credited Writers residual compensation for the licensing and/or distribution of the Covered Pictures to videodisc/videocassette in an amount equivalent to two percent (2%) of combined receipts in excess of 75,000 units.

49.  Pursuant to Article 15.B.2 of the MBA, Respondents are required to pay Credited Writers residual compensation of fifteen percent (15%) of the applicable minimum not later than

thirty days after the Company obtains knowledge of, and no later than six (6) months after, the first foreign telecast of the Covered Pictures on foreign television. Additionally, Respondents are required to pay Credited Writers residual compensation of ten percent (10%) of the applicable minimum when the applicable foreign gross receipts are exceeded.

50. Pursuant to Paragraph 1.b. of the Sideletter on Exhibition of Motion Pictures Transmitted Via New Media ("Sideletter") of the 2008 MBA, for exhibition of television motion pictures on new media via electronic sell through, Respondents are required to pay Credited Writers residual compensation in the amount of 1.8% of 20% of the Company's accountable receipts for the first 100,000 units and 3.5% thereafter.

51. Pursuant to Paragraph 1.a. of the Sideletter, for exhibition of television motion pictures on new media for a limited period or fixed number of exhibitions, Respondents are required to pay Credited Writers residual compensation in the amount of 1.2% of the Company's accountable receipts.

52. Pursuant to Paragraph 2.b. of the Sideletter, during the first year of exhibition of the Covered Pictures on new media via ad-supporting streaming, Respondents are required to pay Credited Writers residual compensation at the applicable percentage rate of the applicable minimum compensation upon expiration of the initial streaming window. Thereafter, Respondents are required to pay Credited Writers residual compensation in the amount of 2% of distributor's gross receipts for this usage.

53. In breach of the foregoing MBA provisions, Respondents have failed and refused and continue to fail and refuse to pay the required residual compensation, which compensation is currently due, owing and unpaid.

54. Pursuant to Article 51.C.6 of the MBA, Respondents are required to pay interest on the unpaid residual compensation at the rate of one and one-half percent (1.5%) per month, commencing to accrue on the earlier of: (a) seven days after notice in writing to Company from the Guild of such delinquency, or (b) sixty days after such payment becomes due and payable and continuing to accrue until paid in full.

## PRAYER FOR RELIEF

Complainant seeks the following relief:

a. An order requiring Respondents to pay to the Credited Writers residual compensation for the release of the Covered Pictures to the basic cable, pay television, videodisc/videocassette, free television, foreign television, new media-EST, new media-consumer do not pay and new media–limited period or fixed number of exhibitions markets, plus interest thereon;

b. An order requiring Respondents to pay the Credited Writers additional guaranteed minimum compensation if any of the Covered Pictures are determined to be made for pay television, plus interest thereon;

c. An order requiring Respondents to furnish to the WGAW the requisite documents or records reasonably necessary to confirm compliance with the MBA;

d. An order requiring Respondents to make Pension Plan and Health Fund contributions on behalf of the Credited Writers, plus interest thereon;

e. An order whereby the WGAW is assigned the right to receive all monies owed to Respondents by any third party including, but not limited to, any licensee, transferee or successor in interest, subject to any prior perfected security agreement in favor of a third party, until all residual compensation and all interest accrued thereon, and all Pension Plan and Health Fund contributions and interest accrued thereon, have been paid in full;

f. An order requiring Respondents to pay damages to the WGAW and to Credited Writers for their failure to comply with the financial reporting and disclosure requirements;

g. An order requiring Respondents to pay damages to the WGAW and to Credited Writers for their failure to provide assumption agreements as required by the MBA;

h. An order requiring Respondents to post an adequate bond, cash, or other security to guarantee residual payments in an amount and on such conditions as are subject to proof at the time of the hearing in this matter;

i. An order requiring Respondents to pay punitive or exemplary damages; and

j. Such other and further relief as the Arbitrator may deem just and proper.

WRITERS GUILD OF AMERICA, WEST, INC.

DATE: 7-23-14          BY: _____
                            SHANNON KEAST
                            Counsel for Complainant

**SCHEDULE A**

| Title | Credits |
|---|---|
| A Kiss At Midnight | Written by: Anna Sandor |
| After the Fall | Written by: Wayne Lemon |
| Always and Forever | Written by: Riley Weston |
| Cabin, The | Teleplay by: Gary Goldstein<br>Story by: Dennis Pratt |
| Chasing a Dream aka Miles From Nowhere | Written by: Bryce Zabel & Jackie Zabel |
| Chasing Leprechauns | Written by: Rod Spence |
| Christmas Pageant, The | Written by: Mark Valenti |
| Class, The | Written by: Pamela Wallace |
| Cupid Inc. aka Cupid | Written by: Judd Parkin |
| Farewell Mr. Kringle | Written by: Robert Tate Miller |
| Fixing Pete | Written by: Larry Kase & Joel Ronkin |
| Flower Girl, The | Teleplay by: Marjorie Sweeney<br>Story by: Mark Lloyd Rappaport & Richard Schenkman |
| Healing Hands aka Working Miracles | Written by: Steven H. Berman |
| Honeymoon for One | Written by: Rick Suvalle |
| I Married Who? aka Always a Bride | Written by: Nina Weinman |
| Ice Dreams | Written by: James Bruner & Elizabeth Stevens |
| Ladies of the House | Written by: Karen Legasse Struck |
| Love Begins | Written by: Michael Moran |
| Love's Everlasting Courage aka Love's Resounding Courage | Written by: Kevin Bocarde |
| Meet My Mom aka Soldier Story | Written by: Pamela Wallace |
| Mending Fences aka A view From Here | Written by: Donald Martin & Mitchell Gabourie |
| Mystery Girl aka A Crush on You | Written by: Keith Merryman & David A. Newman |
| Nanny Express | Written by: Judith Heiman Kriegsman & Stephen Langford and Riley Weston |
| Notes from Dad aka Playing Father | Written by: Wayne Lemon |
| Oliver's Ghost | Written by: David Golden |
| Operation Cupcake | Written by: Neal Dobrofsky & Tippi Dobrofsky |
| Our First Christmas | Written by: Edithe Swensen |
| Puppy Love | Written by: Cynthia Riddle & Peter Hunziker |
| Relative Stranger | Written by: Eric Haywood |
| Santa Switch | Teleplay by: Rod Spence and Gregg Rossen & Brian Sawyer<br>Story by: Rod Spence |
| Second Chances | Written by Karen Lagasse & Jim Buck |
| Seven Year Hitch aka Common Law | Written by: Brian Sawyer & Gregg Rossen |

| **SCHEDULE A** | |
| --- | --- |
| **Title** | **Credits** |
| Storm, The aka Megatorm | Teleplay by:  David Abramowitz  and  Dennis A. Pratt |
| Strawberry Summer | Teleplay by:  Gary Goldstein  and  Jim Head<br>Story by: Jim Head |
| Thanksgiving House, The | Teleplay by: J.B. White<br>Story by: J.B. White & Jean Abounader |
| This Magic Moment | Written by: Gary Goldstein |
| Three Gifts aka Christmas Gift | Written by:  Donald Martin &  Mitchell Gabourie |
| Undercover Bridesmaid aka Bulletproof Bride | Written by:  Gregg Rossen &  Brian Sawyer |
| Wish List | Teleplay by:  Gary Goldstein<br>Story by: Gary Goldstein & Dan L. Clark |
| Wishing Well, The | Written by:  Steven H. Berman |